IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| LOUISE HALL and<br>GLENN GOULD,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 07-773C<br>(Judge Braden) |

## DEFENDANT'S MOTION TO DISMISS

Pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims, the United States respectfully requests that the Court dismiss plaintiffs Louise Hall and Glenn Gould's complaint for lack of subject matter jurisdiction. In support of this motion, we rely upon the complaint ("Compl."), and the following brief, with appendix.

## STATEMENT OF THE ISSUES

Whether this Court possesses jurisdiction to entertain plaintiffs' Fifth Amendment takings claim where the claim is based upon the Government's alleged unlawful acts, where plaintiffs are asking this Court to overturn a decision of the Interior Board of Land Appeals, and where there has never been a determination that the mining claim is a valid claim.

## STATEMENT OF FACTS

In 1993, Mary Louise Hall purchased the Silver Swan and Silver Swan # 2 mining claims, along with ten claims named the White Swan # 1 - # 10 claims. Compl. ¶27. These claims are unpatented mining claims located on public land. Compl. ¶1, 15.[1] At the time Ms. Hall

---

[1] The Mining Law of 1872, 30 U.S.C. § 21, et seq. (1986), allows individuals to locate mining claims on certain public lands.

purchased the claims, the cabin and other structures were already present on the Silver Swan claim. Compl. ¶27.

In June 2001, Ms. Hall forfeited the White Swan claims when she failed to pay statutorily mandated maintenance fees. Compl. ¶27. In November 2001, believing that the cabin was located on the abandoned White Swan claims, the Bureau of Land Management ("BLM") entered into a memorandum of understanding ("MOU") with the Sierra Club, and enrolled the structures on the Silver Swan mining claim into the Adopt-a-Cabin program. Compl. ¶35. Under the terms of the MOU, BLM authorized the public to use the structures for camping and other activities. Compl. ¶38.

In July 2002, BLM acknowledged to Ms. Hall that the cabin had been mistakenly enrolled in the Adopt-a-Cabin program. Compl. ¶43.

According to the complaint, Ms. Hall sold the structures on the Silver Swan claim to Mr. Gould in 2002 . Compl. ¶41.

In early 2004, the BLM issued a Decision and Notice of Noncompliance ("NON"), finding that the residential cabin and other structures present on the Silver Swan lode mining claim were contrary to BLM's regulatory requirements. Compl. ¶44.

Ms. Hall filed a notice of appeal to the Interior Board of Land Appeals ("IBLA"). Compl. ¶46. In a decision dated March 15, 2007, the IBLA affirmed BLM's finding that the cabin and other structures on the Silver Swan claim were not being used for any purpose reasonably incident to mining as required by 43 C.F.R. § 3715.2, and that the presence of these structures on public lands was therefore unlawful. See Exhibit 1, IBLA Decision at 2, 16. The IBLA found that "[t]he record makes it clear that Hall could not justify the presence of the cabin and other

structures under 43 CFR 3715.2." Id. at 6. However, the IBLA shifted responsibility for removal of the cabin and other structures from Ms. Hall to BLM. Id. at 16. Further, with respect to Ms. Hall's "accusations that BLM destroyed or removed her personal property and appliances," the IBLA found that "the record documents the fact that the cabin was vandalized and stripped of appliances and furniture before BLM first inspected it in 1997, and that Hall had let the cabin fall into disrepair. Hall admitted this was true in her 1998 report to the Inyo County Assessor." IBLA Decision at 15. The IBLA also found that "notwithstanding Hall's assertions about the illegality of BLM's ownership of the house, she makes it clear that she does not want it restored to her. She characterizes it as a 'public nuisance' in which the hanta virus may be present as a result of 'dead mice' there." Id. at 11. Finally, the IBLA found that "to the extent Hall appears to believe that as a legal matter she was deprived of ownership of the Silver Swan mining claims by BLM's actions with respect to the cabin, she is mistaken." IBLA Decision at 15.

On November 5, 2007, Ms. Hall and Mr. Gould commenced this action. The complaint contains one count. In that count, Ms. Hall and Mr. Gould allege that the Silver Swan structures were mistakenly entered into the Adopt-a-Cabin program and that BLM volunteers removed Hall's mining equipment and gemstones from the property and engaged in mining on the claim. Compl. ¶¶35, 41, 43, 49, 63-77. Ms. Hall and Mr. Gould assert that these actions constitute a taking of the cabin, equipment, and mining claim, entitling them to compensation from the United States. Compl. ¶¶ 64-65.

As set forth below, this Court is without jurisdiction over Ms. Hall and Mr. Gould's takings claim because that claim is based on the Government's unauthorized failure to follow its own regulations. Further, this Court does not have jurisdiction to overturn the IBLA's decision

that the cabin and structures were occupying public lands without authorization. Finally, plaintiffs have never established a property interest in the unpatented mining claim. For these reasons, the complaint should be dismissed.

## ARGUMENT

### I. Standard of Review

In considering a motion to dismiss for either lack of subject matter jurisdiction or failure to state a claim, the Court construes all allegations in the light most favorable to the non-moving party. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). The Court must presume that the undisputed factual allegations included in the complaint are true. Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 747 (Fed. Cir. 1988).

The burden of establishing jurisdiction is borne by the plaintiff. See George W. Kane, Inc. v. United States, 26 Cl. Ct. 655, 657 (1992). "Where the court's jurisdiction is put in question, plaintiff 'bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence.'" Reynolds, 846 F.2d at 748.

This Court's jurisdiction to entertain a suit depends upon, and is circumscribed by, the extent to which the United States has waived its sovereign immunity. United States v. Testan, 424 U.S. 392 (1976). Waivers of the United States' sovereign immunity cannot be implied, but must be unequivocally expressed by Congress. Id,; United States v. King, 395 U.S. 1, 4 (1969). Thus, any grant of jurisdiction to this Court must be construed strictly, and all conditions placed upon such a grant must be satisfied before the Court may entertain a claim. United States v. Mitchell, 445 U.S. 535, 538 (1980).

## II. This Court Does Not Have Jurisdiction To Entertain Plaintiffs' Takings Claim

### A. Plaintiffs' Takings Claim Is Premised Upon A Regulatory Violation

While the Fifth Amendment may serve as a basis for this Court's jurisdiction, "[t]o the extent that federal agents acted in a manner inconsistent with their authority under federal law, plaintiff may not seek redress under the Fifth Amendment's takings clause because the takings clause applies only to authorized government actions." Klump v. United States, 38 Fed. Cl. 243, 247 (1997). A plaintiff cannot assert that a Government action was wrongful and, at the same time, bring a takings claim. See Biddulph v. United States, 74 Fed.Cl. 765 (2006) ("Plaintiff cannot simultaneously argue that the tax assessments by the IRS were not authorized and maintain a proper Fifth Amendment 'takings' claim.").

In this case, plaintiffs allege that BLM's mistake in placing the cabin located on the Silver Swan mining claim into the Adopt-a-Cabin program resulted in a taking of Ms. Hall's mining claim, equipment and minerals, and in a taking of the cabin and other structures which are alleged to be owned by Mr. Gould. Compl. ¶¶ 2, 4, 52, 62. Specifically, the complaint alleges that:

- "The BLM has failed to follow regulations with regard to allowing public access to unpatented mining claims resulting in a taking of the claims and property related to the claim." Compl. ¶ 3.

- "BLM acknowledged that the Silver Swan mining claim and structures should never have been included in the Adopt-a-Cabin program in the first place." Compl. ¶ 4.

- "The BLM failed to follow the proper agency procedures for 'taking' private structures on unpatented mining claims." Compl. ¶ 5.

- "By including the Silver Swan mining claim and structures in the Adopt-a-Cabin program, and by failing to notify the public of its error once the BLM determined

that the property should not have been included in the Adopt-a-Cabin program, the United States of America, BLM took Plaintiffs' private property without due process and just compensation in violation of the Fifth Amendment of the United States Constitution." Compl. ¶ 6.

- "BLM admitted that Gould's structures on Hall's unpatented mining claim had been mistakenly entered into the Adopt-a-Cabin program and that it had erected the Adopt-a-Cabin signs in error. However, the BLM failed to remove all of signs from the unpatented mining claim designating the structures as part of the Adopt-a-Cabin program nor did the BLM make any effort to dispel the notion that property was open to the public and was a public recreation site." Compl. ¶ 43.

Given the foregoing, it is clear that plaintiffs' taking claim is based on unlawful Government action.

Defendant recognizes that the Court of Appeals for the Federal Circuit has held that this Court may hear a takings claim where the plaintiff assumes the legality of the Government action. Acadia Tech., Inc. v. United States, 458 F.3d 1327, 1330 (Fed. Cir. 2006) ("For takings purposes, we therefore must assume the government conduct at issue in this case was not unlawful."). Indeed, in Rith Energy, Inc. v. United States, 247 F.3d 1355 (Fed. Cir. 2001), the Court of Appeals held that to bring a takings claim "Rith is thus required to litigate its takings claim on the assumption that the administrative action was both authorized and lawful." Id. at 1366.

Here, however, plaintiffs are trying to have it both ways – they assert that the Government acted unlawfully and they assert a takings claim. That they cannot do. See Biddulph, 74 Fed.Cl. at 768 ("Plaintiff cannot simultaneously argue that the tax assessments by the IRS were not authorized and maintain a proper Fifth Amendment 'takings' claim.").[2]

---

[2] Plaintiffs state that "[e]ven if the actions of the government were not authorized or were not proper, the Plaintiffs are entitled to just compensation." Compl. ¶ 65. Of course, that is not the same as assuming the legality of the Government's conduct.

Moreover, assuming the legality of the Government's actions can be fatal to a takings claim. Indeed, that was the case in Rith. 247 F.3d at 1366. Here too, assuming the legality of the Government's actions is fatal to plaintiffs' claim. Put simply, plaintiffs cannot succeed on their claim if they assume that BLM lawfully enrolled the cabin in the Adopt-a-Cabin program. Under the Adopt-a-Cabin program, BLM would have entered into an MOU with Ms. Hall which would have given BLM the right to maintain the cabin and open it to public use and would have given her the right to keep the structure on public lands.

Finally, although not styled as such, plaintiffs appear to be alleging a tort claim, a claim which must be brought under the Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1). Of course, this Court does not have jurisdiction over tort claims. See e.g., Ogden v. United States, 61 Fed.Cl. 44 (2004) (citing numerous cases for this proposition).[3]

B. This Court Does Not Have Jurisdiction To Overturn The IBLA's Decision That The Cabin and Structures Were Occupying Public Lands Without Authorization

In their complaint, plaintiffs are asking this Court to reach a conclusion in direct conflict with the IBLA's holding that the cabin and other structures were not being used for any purpose incidental to mining and, therefore, were subject to removal by BLM. It is well established that "in adjudicating a taking claim, this Court does not have either the jurisdiction to review, or the authority to disregard, IBLA decisions that adjudicate property rights." Underwood Livestock, Inc. v. United States, 79 Fed. Cl. 486 (2007), citing Del-Rio Drilling Programs, Inc. v. United States, 146 F.3d 1358, 1366 (Fed.Cir.1998). Underwood Livestock is directly on point. There,

[3] Any such claim would likely be time-barred under 28 U.S.C. § 2401(b), since a tort claim against the United States must be presented in writing to the appropriate Federal agency within two years after the claim accrues.

the plaintiffs claimed that BLM had unlawfully taken water rights and wrongfully destroyed a dam. However, IBLA had previously determined that plaintiff did not have a cognizable property interest in the right-of-way which entitled it to erect and maintain the dam on public lands. The Court explained that "it is well established in the Federal Circuit that 'when an agency determines that a private party is not the owner of property that is claimed to have been taken, the private party must challenge that determination in district court under the APA and may not do so through a Tucker Act takings action in the Court of Federal Claims.'" Id. at 497 (quoting Del-Rio Drilling, 146 F.3d at 1366). The Court stayed the case pending a challenge to the IBLA decision in district court. Id. at 499-500.

As in Underwood Livestock, plaintiffs may not be styling their complaint as a direct challenge to the IBLA's decision, but they are nonetheless asking this Court to reach a decision in direct conflict with that decision. The IBLA determined that plaintiffs had no right to maintain the cabin or other structures on the mining claim. IBLA Decision, at 16. That holding precludes plaintiffs from asserting a takings claim regarding the cabin and structures. Further, the IBLA found that "to the extent Hall appears to believe that as a legal matter she was deprived of ownership of the Silver Swan mining claims by BLM's actions with respect to the cabin, she is mistaken." IBLA Decision, at 15. The IBLA also found that "although the cabin was modified in connection with the Adopt-A-Cabin program, the record documents the fact that the cabin was vandalized and stripped of appliances and furniture before BLM first inspected it in 1997, and that Hall had let the cabin fall into disrepair. Hall admitted that this was true in her 1998 report to the Inyo County Assessor." IBLA Decision, at 15. This contradicts plaintiffs' claims in their

complaint that it was "volunteers" who vandalized the cabin after it was enrolled in the Adopt-a-Cabin program in 2001. Compl. ¶¶ 35, 55.

In sum, plaintiffs are asking this Court to overturn or disregard the IBLA's decision. "For this court to undertake a review of the validity of the claims declared void by the Interior Department would be to assume a function lodged elsewhere by Congress and never contemplated for this court." Freese v. United States, 221 Ct.Cl. 963 (1979). In a similar manner, plaintiffs are seeking to overturn an IBLA decision regarding the unauthorized occupancy of the property. Accordingly, this Court should not adjudicate plaintiffs' claim unless and until they successfully appeal the IBLA's decision in district court.[4]

C. Plaintiffs Have Never Established a Property Right in the Unpatented Mining Claim

"To have a compensable interest in unpatented mining claims sufficient to bring a taking action in this Court, there must have been a determination as to the validity of those mining claims." Holden v. United States, 38 Fed.Cl. 732, 735 (1997). Indeed, plaintiffs state in their complaint that to establish a property interest in an unpatented mining claim, "there must have been an administrative determination by the Department of the Interior that the mining claim is valid, supported by a discovery of a valuable mineral deposit." Complaint ¶ 18.

Here, no administrative determination has ever been made that the mining claim is supported by a discovery of a valuable mineral deposit. Given this fact, plaintiffs have not properly stated a takings claim. See Holden, 38 Fed.Cl. 732 (holding that "[w]ithout a

[4] In September 2000, Ms. Hall asserted that she intended to "'demolish'" the structures and opined that "restoration 'seems impossible,'" and in September 2003 she characterized the cabin as a "public nuisance." IBLA Decision, at 9. It is perplexing that she (or Mr. Gould) now seeks $907,310.00 in compensation for those structures. Compl. ¶ 62.

determination as to the validity of the plaintiffs' unpatented mining claims, those mining claims do not constitute a compensable property interest, and, therefore, the plaintiffs cannot recover in this Court under a taking theory" but staying case until BLM could determine the validity of the claim.). Thus, even if there were no other grounds to dismiss the complaint, plaintiffs cannot proceed with their claim that the Government's actions constitute a taking of the mining claim.

## CONCLUSION

For the foregoing reasons, we respectfully request that the Court grant our motion to dismiss and dismiss plaintiffs' complaint with prejudice. In the alternative, we respectfully request that the Court stay this case pending plaintiffs' appeal of the IBLA decision to district court.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s Brian M. Simkin
BRIAN M. SIMKIN
Assistant Director

/s L. Misha Preheim
L. MISHA PREHEIM
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L St., NW
Washington, D.C. 20530
Tele: (202) 305-3087
Fax: (202) 305-1571

March 28, 2008

Attorneys for Defendant

**CERTIFICATE OF FILING**

I hereby certify that on the 28th day of March, 2008, a copy of the foregoing "Motion to Dismiss" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/L. Misha Preheim