IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| LOUISE HALL and<br>GLENN GOULD,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 07-773C<br>(Judge Braden) |

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS

In our motion to dismiss, we demonstrated that plaintiffs' takings claim should be dismissed because it is premised upon an unlawful taking (due to a regulatory violation) and not a lawful taking, which is the necessary predicate of a Fifth Amendment takings claim. We further demonstrated that to provide plaintiffs with the relief they seek would require this Court to reach a decision in conflict with the Interior Board of Land Appeal's ("IBLA") decision, something the Court cannot do. Finally, we explained that, even assuming that plaintiffs could assert a takings claim and that the Court somehow could resolve that claim without issuing an opinion in conflict with the IBLA's decision, this Court still could not proceed with this litigation, because a validity determination has never been performed on Ms. Hall's mining claim.

In their opposition, plaintiffs first argue that their takings claim is premised not upon a regulatory violation, but the Government's failure to <u>correct</u> its regulatory violation. This is a distinction without a difference and plaintiffs fail to contradict our point that a takings claim may not be premised upon a regulatory violation.

Plaintiffs also argue that they are not seeking to overturn the IBLA's decision. The question, however, is whether this Court may grant plaintiffs the relief they seek without disregarding that decision. The answer to that question is no. Nonetheless, plaintiffs claim that they may assert a temporary takings claim from the date the cabin was enrolled in the Adopt-a-Cabin program until the date of the IBLA's decision. Any such claim, however, still would be at odds with the IBLA's finding that plaintiffs never had a right to maintain the cabin and other structures on the mining claim.

Finally, plaintiffs correctly recognize that this litigation may not proceed, because a validity determination has never been performed, but suggest the case be stayed until such a determination is made. However, given that plaintiffs' takings claim is based upon a regulatory violation, which the validity determination cannot cure, the Court should dismiss the case, not stay it.

## ARGUMENT

### 1. Plaintiffs' Takings Claim Is Based Upon A Regulatory Violation

As we explained in our motion to dismiss, a takings claim may not be premised upon an unlawful Government action. See, e.g., Acadia Technology, Inc. v. United States, 458 F.3d 1327, 1331 (Fed. Cir. 2006) ("Acadia's assertion that Customs' actions ran afoul of the Customs statutes therefore does not form the basis for a legal claim under the Takings Clause of the Fifth Amendment."). The Federal Circuit has made clear that this Court may hear a takings claim where the plaintiff assumes the legality of the Government action. Id. at 1330. ("For takings purposes, we therefore must assume the government conduct at issue in this case was not unlawful."); Rith Energy, Inc. v. United States, 247 F.3d 1355, 1366 (Fed. Cir. 2001) (holding

that, to bring a takings claim "Rith is thus required to litigate its takings claim on the assumption that the administrative action was both authorized and lawful.").

Here, there can be no dispute that plaintiffs' claim is premised upon a regulatory violation. Compl. ¶¶ 3, 4, 5, 6, 43. Plaintiffs assert that "[t]he BLM has failed to follow regulations with regard to allowing public access to unpatented mining claims resulting in a taking of the claims and property related to the claim." Compl. ¶ 3 (emphasis added). Plaintiffs further state that "[b]y including the Silver Swan mining claim and structures in the Adopt-a-Cabin program, and by failing to notify the public of its error once the BLM determined that the property should not have been included in the Adopt-a-Cabin program, the United States of America, BLM took Plaintiffs' private property without due process and just compensation in violation of the Fifth Amendment of the United States Constitution." Compl. ¶ 6 (emphasis added). Plaintiffs make similar assertions in their opposition. Opposition at 2-3.

Plaintiffs fail to grasp the essence of (or even address) the precedential decisions we cite that preclude takings claims based upon unlawful Government action. Instead, relying upon Osprey Pacific Corp. v. United States, 41 Fed. Cl. 150, 157 (Fed. Cl. 1998), plaintiffs assert that regardless of the authority under which BLM took the plaintiffs' property, because they acknowledge the takings "as a legal reality," and in this action, seek only just compensation, their suit is proper. Opposition, at 11.

Osprey involved a claim for damages resulting from the seizure of a Navy patrol boat that had been declared surplus and donated to an Oregon public agency. Id. at 151. As the Court noted, Osprey was "an unusual case" and "[i]ts fact pattern [did] not fit the regular takings mold." Id. The Government argued that the boat was not taken within the meaning of the Fifth

Amendment because GSA did not have authority to seize it. Id. at 157. The Court rejected that argument, noting that the Government had seizure authority pursuant to 41 C.F.R. § 101-44.117. The Court then held that "Plaintiff in this case accepts that the government has taken their property; it just wants to be compensated for it." Id. at 158. The Court then asserted, without citing to any authority, that "[b]y acceptance it is meant not that the property was taken by right, but rather that plaintiff waives any claim for any damages for tortious or arbitrary and capricious conduct or for any type of equitable relief." 41 Fed. Cl. at 158.

Thus, plaintiffs contend that so long as they waive the right to bring a tort or equitable claim, they may assert a takings claim in this Court. However, if that is so, Osprey is inconsistent with the more recent law from this circuit, which is that: (1) a takings claim may not be premised upon a regulatory violation; and (2) a plaintiff must accept that the property was lawfully taken, if it wants to bring a takings claim. "We have made clear that a claim premised on a regulatory violation does not state a claim for a taking. . . . [W]e [have] distinguish[ed] between the valid exercise of the Court of Federal Claim's jurisdiction over a takings claim when the claim was that 'property was taken regardless of whether the agency acted consistently with its statutory and regulatory mandate' and the bar to such jurisdiction when 'the plaintiff claims it is entitled to prevail because the agency acted in violation of statute or regulation.'" Lion Raisins, Inc. v. United States, 416 F.3d 1356, 1369 (Fed. Cir. 2005) (quoting Rith Energy, Inc. v. United States, 247 F.3d 1355, 1366 (Fed.Cir. 2001)) (emphasis in original). Here, as explained above, plaintiffs have alleged the latter – that they are entitled to prevail because of the unlawful Government action.

Indeed, Lion Raisons is directly on point. In that case, the Raisin Administrative Committee ("RAC') decided to use reserve money for a particular year to subsidize raisin export programs for two subsequent years. The plaintiff urged that the RAC's decision to use the 1997 reserve pool proceeds to fund the program in subsequent crop years constituted a taking because it was unlawful. Lion Raisons, 416 F.3d at 1369. There was no allegation that the agency had acted outside its authority – rather, the claim was that the agency's action was a violation of a statute or regulation. Id. The Federal Circuit held that "[b]ecause Lion's takings claim was premised on the allegations that the RAC violated the statute and regulations, the Court of Federal Claims properly dismissed the complaint." Id. at 1370. Similarly here, the premise of plaintiffs' claim is an unlawful Government action, which should have been addressed in another forum.

In an effort to save their takings claim, plaintiffs now assert that their claim is not based upon an unlawful act. Instead, they claim, the issue "is whether the BLM's affirmative inaction in failing to correct its 'mistake' . . . was a taking." Opposition, at 10. Even if true, this does not save plaintiffs' claim. Whether their claim is that the Government acted unlawfully or failed to correct an unlawful action makes no difference. The claim is still based upon a "mistake" i.e., an unlawful government action, something the Federal Circuit has made clear is not cognizable. Golden Pacific Bancorp v. United States, 15 F.3d 1066, 1076 (Fed. Cir. 1994) ("[A] mistake may give rise to a due process claim, but not a taking claim. And the due process clause of the Constitution is not a money-mandating provision.").

Plaintiffs also offer to rewrite their complaint, presumably in an effort to avoid the foregoing by assuming the legality of the Government's conduct. Opposition, at 12. But

plaintiffs cannot succeed on their claim if they assume that the Government acted lawfully, because if plaintiffs voluntarily enrolled their cabin in the Adopt-a-Cabin program, there would be no taking (nor would there be any "mistake" to correct). See IBLA Decision at 7 (explaining that under the Adopt-a-Cabin program, Ms. Hall would voluntarily enter into a memorandum of understanding with the BLA under which she could share use of the cabin with the public.). In other words, if we assume the cabin was lawfully enrolled in the program, plaintiffs would not be entitled to any compensation.[1]

II. Plaintiffs Ask This Court To Reach A Decision In Conflict With The IBLA's Decision

Even if the Court were to find that plaintiffs have stated a takings claim, their claim still should be rejected, because such a claim asks this Court to reach a decision at odds with the decision of the IBLA. Plaintiffs make two points in response to this argument. First, plaintiffs assert that they are not asking the Court to overturn the IBLA's decision. Opposition, at 12. Even if true, however, it is irrelevant. While plaintiffs may not have styled their complaint as

---

[1] In Rith Energy, 247 F.3d at 1366, the Federal Circuit held that:

> In this case, having forgone its challenge to OSM's administrative actions, Rith is not free to renew its challenge to those actions under the cover of a takings claim in the Court of Federal Claims. Rith is thus required to litigate its takings claim on the assumption that the administrative action was both authorized and lawful. On the facts of this case, the consequence of assuming the lawfulness of OSM's actions, i.e., that OSM was correct in concluding that Rith's mining activities constituted an unacceptable threat of acid mine drainage and the consequent pollution of groundwater in the area surrounding the mine operations, is to limit the issue before us to whether prohibiting Rith from mining under those circumstances constitutes a taking. And on that issue, as we have explained, the absence of a reasonable investment-backed expectation on Rith's part that it would be permitted to mine while producing acid mine discharge in violation of SMCRA defeats its takings claim.

such, plaintiffs are asking this Court to disregard the IBLA's decision. It is well established that "in adjudicating a taking claim, this Court does not have either the jurisdiction to review, or the authority to disregard, IBLA decisions that adjudicate property rights." Underwood Livestock, Inc. v. United States, 79 Fed. Cl. 486 (2007) (citing Del-Rio Drilling Programs, Inc. v. United States, 146 F.3d 1358, 1366 (Fed.Cir. 1998)) (emphasis added). Here, for plaintiffs to succeed on their claim that the cabin was taken by the BLM, they would, of course, have to show that they had a right to maintain the cabin on the mining claim. The IBLA, however, found this not to be the case. IBLA Decision, at 14-16. Moreover, for plaintiffs to show that there was a taking of the mining claim, they would have to show that they were deprived of ownership of the claim by BLM. The IBLA found that Ms. Hall was, in fact, not deprived of ownership of the Silver Swan mining claims as a result of BLM's actions. IBLA Decision, at 15. Finally, even assuming that they could otherwise show a taking, plaintiffs' assertion that the cabin is worth nearly $1 million is in conflict with the IBLA's holding that the cabin was vandalized, stripped of valuables and in disrepair prior to 1997. IBLA Decision, at 15.

Plaintiffs second argument is that, "[a]t a minimum, there was a temporary takings of the Plaintiffs' property from the induction of the Plaintiffs' property into the Adopt-a-Cabin program in 2001 until the IBLA's decision in 2007." Opposition at 13. The IBLA, however, found that Ms. Hall had not shown that the cabin had ever been used for any purpose reasonably incident to mining and, therefore, could be removed by BLM. The IBLA explained that:

> Hall is confused about the nature of a mining claim and the rights it conveys to her as claimant. When she acquired the mining claim and structures in 1993, and she does claim that she purchased both, she obtained certain rights to mine and occupy the claim for mining purposes, subject to the rules at 43 CFR Subparts 3809 and 3715. Though it may be

> true that the cabin predates her acquisition, this does not mean that its placement on a mining claim was legal or grandfathered when she acquired it. She had no option to allow the cabin to "occupy" the site in the absence of specific mining-related activity that justified it under the regulations at 43 CFR Subpart 3715.

IBLA Decision, at 14. The IBLA then held that "we affirm BLM's finding in the NON that the cabin and other structures on the Silver Swan claim were not being used for any purpose reasonably incident to mining as required by 43 CFR 3715.2 and are therefore subject to removal." IBLA Decision at 16.

In so holding, the IBLA made clear that "[a]t no point during Hall's ownership of her mining claims has she provided any justification for keeping these structures on her claims." IBLA Decision, at 2 (emphasis added). Thus, to grant plaintiffs the relief they seek, even under their new temporary takings theory, would require this Court to hold that plaintiffs had the right to maintain the cabin and structures on the claim. However, given the IBLA's finding that plaintiffs never had the right to maintain the cabin and other structures on the mining claim, plaintiffs cannot succeed on their claim without asking this Court to disregard the IBLA's decision.[2]

In sum, while plaintiffs have not styled their complaint as a request to overturn the IBLA's decision, the relief they seek requires just that. Having opted not to challenge the IBLA

---

[2] Even in their opposition to our motion to dismiss, plaintiffs make claims at odds with the IBLA's decision. For example, they assert that 43 C.F.R. 3809 "allowed Hall's structures to be present on the unpatented mining claim" and that "[t]he issue before the IBLA was whether the BLM's adoption of the structures into the Adopt-a-Cabin program relieved Hall or Gould of liability for the structures." Opposition, at 3, 7. In fact, the IBLA case was an appeal by Ms. Hall of BLM's issuance of a decision and notice of noncompliance ("NON") determining that the cabin and other structures were not being used for any purpose reasonably incident to mining. In other words, the issue before the IBLA was whether there was any justification for allowing the structures on the claim. IBLA Decision at 1-2. The IBLA found that there was not. Id. at 2, 16.

decision in district court, plaintiffs are not entitled to do so under cover of a takings claim in this Court.

III. This Case Should Be Dismissed, Not Stayed

Finally, plaintiffs acknowledge that a validity determination has never been performed on the mining claim. Plaintiffs ask the Court to stay the case pending such a determination. While we agree that this would be the proper course if this were the only issue before the Court, given that plaintiffs cannot assert a takings claim for the reason set forth above, their complaint should be dismissed. Further, in the event that the Court finds that plaintiffs may assert a takings claim, but should first proceed with appealing the IBLA's decision to district court, defendant should not be required to perform a validity determination unless plaintiffs achieve a favorable result in that appeal.[3]

---

[3] A validity determination is a resource-intensive process that is conducted by a Certified Mineral Examiner who takes samples at the discovery site(s) identified by the claimant, conducts chemical analyses of the samples, identifies potential markets, and completes an economic analysis of the costs of mining. See Bureau of Land Management Handbook for Mineral Examiners H-3890-1 (Sept. 11, 2007). The Certified Mineral Examiner's work is then summarized in a Mineral Report that is subject to multiple layers of agency review.

If a determination is made that there is no valuable mineral discovery on the claim, then the Government files a complaint and the claimant may contest the finding through an administrative appeal process, which includes an evidentiary hearing before an Administrative Law Judge. 43 C.F.R. § 4.451-2 through 4.452-8. The Administrative Law Judge's decision can be appealed by either party to the IBLA. 43 CFR § 4.452-9. If the IBLA confirms that the claimant has no valuable mineral discovery, the claimant may then appeal the IBLA decision to district court. Underwood Livestock, Inc. v. United States, 79 Fed.Cl. 486, 499 (2007).

Because the lands remain open to mining and Ms. Hall has maintained her claim through payment of applicable fees, Ms. Hall may engage in mining activities at any time and no validity determination is required. Thus, the fact that a validity determination has never been performed does not affect Ms. Hall's ability to mine the land, and BLM has no present plan to conduct a validity determination. On the other hand, if a validity determination is conducted and demonstrates that no valuable mineral discovery exists, then the United States would file a

CONCLUSION

For the foregoing reasons and the reasons set forth in our motion, we respectfully request that the Court grant our motion to dismiss and dismiss plaintiffs' complaint with prejudice. In the alternative, we respectfully request that the Court stay this case pending plaintiffs' appeal of the IBLA decision to the district court.

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s Brian M. Simkin
BRIAN M. SIMKIN
Assistant Director

/s L. Misha Preheim
L. MISHA PREHEIM
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L St., NW
Washington, D.C. 20530
Tele: (202) 305-3087
Fax: (202) 305-1571

July 14, 2008

Attorneys for Defendant

complaint declaring the mining claim null and void. 43 C.F.R. §§ 4150-4, 4151-1, 4.451-2. If BLM were to find that no valuable discovery exists, then this would affect Ms. Hall's ability to conduct mining activities on these public lands.

**CERTIFICATE OF FILING**

I hereby certify that on the 14th day of July, 2008, a copy of the foregoing "Defendant's Reply in Support of Motion to Dismiss" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/L. Misha Preheim