# In the United States Court of Federal Claims

No. 07-773C
Filed: October 31, 2008
**TO BE PUBLISHED**

*************************************
|  |  |
|---|---|
| LOUISE HALL and | * |
| GLENN GOULD, | *   Omnibus Budget Reconciliation Act of 1993, |
|  | *      30 U.S.C. § 28f(a); |
| Plaintiffs, | *   United States Constitution, Amendment V; |
|  | *   Use and Occupancy Under the Mining Laws, |
| v. | *      43 C.F.R. § 3715; |
|  | *   Motion to Dismiss, RCFC (12)(b)(1). |
| THE UNITED STATES, | * |
|  | * |
| Defendant. | * |
|  | * |

*************************************

**Karen Jean Budd-Falen**, Budd-Falen Law Offices, Cheyenne, Wyoming, Counsel for Plaintiffs.

**Loren Misha Preheim**, United States Department of Justice, Civil Division, Washington, D.C., Counsel for Defendant.

### MEMORANDUM OPINION AND FINAL ORDER

**BRADEN,** *Judge.*

I.   **RELEVANT FACTUAL BACKGROUND.**[1]

On November 5, 2007, Louise Hall and Glenn Gould ("Plaintiffs") filed a Complaint in the United States Court of Federal Claims alleging a taking of their private property by the Bureau of Land Management Ridgecrest, California Field Office's ("BLM") "Adopt-a-Cabin" Program. *See* Compl. ¶ 1. The alleged property interests at issue were "mining equipment, structures and the mining claim." *Id*. ¶ 65.

---

[1] The facts cited herein were derived from: Plaintiffs' November 5, 2007 Complaint ("Compl."); United States Department of the Interior, Office of Hearings and Appeals March 15, 2007 Order in *Mary Louise Hall*, IBLA 2004-204, CACA-45693 ("*Mary Louise Hall*"); the Defendant ("Government")'s March 28, 2008 Motion To Dismiss ("Gov't Mot."); Plaintiffs' June 13, 2008 Response In Opposition To The Government's Motion To Dismiss And Cross-Motion To Stay Litigation ("Pl. Resp."); and the Government's July 14, 2008 Reply ("Gov't Reply").

In 1989, the Adopt-a-Cabin Program was initiated by BLM and a group of concerned citizens to repair historic cabins once used by ranchers and miners in Southern California. *See* Bureau of Land Management Volunteer Feature, *available at*, http://www.blm.gov/volunteer/feature/2003/ca/. Under this Program, BLM provides materials and the volunteer citizens provide labor. *See* Compl. ¶ 25. About thirty-seven cabins in remote and inaccessible areas were identified for adoption by BLM's Ridgecrest Field Office. *Id.* Almost half of the proposed sites have been adopted to date. *Id*.

In 1993, Plaintiff Hall purchased several unpatented mining claims, located on public land managed by BLM, including two Silver Swan mining claims and ten White Swan claims. *Id*. ¶¶ 10, 15, 27, 27 n. 1. When the Silver Swan Claim # CAMC 49332 ("Silver Swan Claim") was purchased, Plaintiff Hall also acquired physical property located on the claim, including a cabin, garage, three sheds, and two other structures. *Id*. ¶ 27.

In 1996, BLM implemented regulations requiring claimants on an unpatented mining claim to notify BLM of any occupancy on the claim and attest that the occupancy was "reasonably incident" and "reasonably calculated to lead to the extraction . . . of minerals[.]" *See* 43 C.F.R. § 3715.2(a), (c).[2] Plaintiff Hall did not respond, as required. *See* Compl. ¶ 30. Subsequently, BLM attempted to obtain permission from Plaintiff Hall to incorporate the structures on the Silver Swan Claim into the Adopt-a-Cabin Program and make them available for public use. *Id*.; *see also Mary Louise Hall* at *6 ("BLM sought [Plaintiff] Hall's permission to incorporate the cabin into an 'Adopt-a-Cabin' program[.]"). In February and March of 1999, Plaintiff Hall declined to grant BLM permission. *See* Compl. ¶ 31.

---

[2] Section 3715.2 of Title 43 of the United States Code of Federal Regulations states:

In order to occupy the public lands under the mining laws for more than 14 calendar days in any 90-day period within a 25-mile radius of the initially occupied site, you must be engaged in certain activities. Those activities that are the reason for your occupancy must:

> (a) Be reasonably incident;
> (b) Constitute substantially regular work;
> (c) Be reasonably calculated to lead to the extraction and beneficiation of minerals;
> (d) Involve observable on-the-ground activity that BLM may verify under § 3715.7; and
> (e) Use appropriate equipment that is presently operable, subject to the need for reasonable assembly, maintenance, repair or fabrication of replacement parts.

43 C.F.R. § 3715.2.

In June 2001, Plaintiff Hall forfeited ownership of the second Silver Swan mining claim, # CAMC 49333, and the ten White Swan claims, because of a failure to pay maintenance fees, as required by Section 28f(a) of the Omnibus Budget Reconciliation Act of 1993, 30 U.S.C. § 28f(a).[3] Compl. ¶¶ 34, 35; *Mary Louise Hall* at *9 ("On June 14, 2001, BLM issued a decision declaring the two Silver Swan and the ten White Swan claims forfeited by operation of law for failure to file the maintenance fees[.]"). Subsequently, Plaintiff Hall provided evidence that maintenance fees for the Silver Swan Claim had been paid. *See Mary Louise Hall* at *9-10. Accordingly, on July 2, 2001, BLM issued an Administrative Order "vacating its earlier decision with respect to the Silver Swan Claim." *Id*. at *10. Nevertheless, on November 3, 2001, BLM mistakenly incorporated the structures on the Silver Swan Claim into the Adopt-a-Cabin Program, erroneously assuming those structures were located on the previously forfeited White Swan mining claims. *See* Compl. ¶ 35. In addition, BLM entered into a Memorandum of Understanding ("MOU") with the Sierra Club, authorizing public use of the structures on the Silver Swan Claim for any activities related to casual mining. *Id*. ¶¶ 35, 38. Plaintiff Hall was not a party to the MOU. *Id*. ¶ 37. Thereafter, signs bearing BLM's seal were placed on the Silver Swan Claim, announcing that the structures were part of the Adopt-a-Cabin Program and subject to the terms of the MOU, authorizing the public to enter the claim and use the structures for camping and other activities. *Id*. ¶¶ 38, 40.

In 2002, Plaintiff Hall sold the physical property located on the Silver Swan Claim to Plaintiff Gould. *Id*. ¶ 41. At the time of the sale, neither party was aware of BLM's activities. *Id*. On July 29, 2002, BLM discovered that structures on the Silver Swan Claim mistakenly were entered into the Adopt-a-Cabin Program. *Id*. ¶ 43. BLM also admitted erroneously erecting the Adopt-a-Cabin signs and failing to remove them, resulting in BLM volunteers using and taking Plaintiff

---

[3] Section 28f(a) of the Omnibus Budget Reconciliation Act of 1993 provides:

(a) Claim maintenance fee. The holder of each unpatented mining claim, mill, or tunnel site, located pursuant to the mining laws of the United States, whether located before, on or after August 10, 1993, shall pay to the Secretary of the Interior, on or before September 1 of each year, a claim maintenance fee of $100 per claim or site[.] Such claim maintenance fee shall be in lieu of the assessment work requirement contained in the Mining Law of 1872 (30 U.S.C. 28 to 28e) and the related filing requirements contained in section 1744(a) and (c) of Title 43.

30 U.S.C. § 28f(a).

Hall's personal mining equipment[4] and other physical property,[5] and engaging in mining activities on the claim. *Id*. ¶¶ 42-43, 49.

## II. PROCEDURAL HISTORY.

### A. In The Department Of The Interior.

On March 4, 2004, Plaintiff Hall received a Notice of Noncompliance ("NONC") from BLM, advising Plaintiff Hall that the structures on the Silver Swan Claim failed to comply with 43 C.F.R. § 3715.2, because they were not being used purposes "reasonably incident" to mining. *See* Compl. ¶ 44. The NONC gave Plaintiff Hall thirty days to demonstrate that the structures were necessary for mining operations; otherwise they were to be removed by the owner. *Id*. Plaintiff Hall again failed to respond. *Id*. On April 21, 2004, BLM issued a cessation order ("CO") "mandat[ing] that [Plaintiff] Hall cease maintaining her claims on public lands." *Id*.

---

[4] The missing mining equipment included:

- Steel welded bat cages and locks from mining tunnels and mining shafts;
- Mining shaft and tunnel shoring;
- Equipment and supplies for the full production of jewelry and sculptures;
- Mineral beads and findings;
- 400 pounds of cut and polished gemstones, 200 pieces of finished gemstones and beaded jewelry, one ton of slabbed and blocked onyx, 20 marble tabletops, additional marble and soapstone sculptures; and
- One small trencher, one gasoline engine concrete mixer, 2,500 gallon water storage tank, 4-55 gallon barrels for water storage, batteries and generators, solar panels, three ore carts and tracks, stone setting and jewelry making equipment, saws used for quarrying stone, various sized core drills, other additional equipment related to mining, and mineral product finishing.

*See* Compl. ¶ 42.

[5] The used structures included:

- One 1500 square foot stone house, unfurnished, with an additional attached garage and covered porch;
- One separate 736 square foot stone and cement garage;
- One tool house approximately 100 square feet;
- One 221 square foot cabin with attached garage of 190 square feet; and
- One 273 square foot storage shed.

*See* Compl. ¶ 12.

On March 31, 2004, Plaintiff Hall filed a Notice of Appeal with the Interior Board of Land Appeals ("IBLA") to protest the NONC and CO on behalf of herself and Plaintiff Gould. *Id*. ¶ 46.

On March 15, 2007, the IBLA ruled in favor of BLM, finding that the structures on the Silver Swan Claim were not being used for any purpose reasonably incident to mining. *See Mary Louise Hall* at *16. The IBLA, however, recognized that BLM failed to remove the Adopt-a-Cabin signs and advise the public that the site was not for public use. *Id*. at *15 ("Hall legitimately questions whether BLM has done (or could do) enough to dispel the public perception that the cabin is available for public use.").[6] Therefore, the IBLA held that BLM was responsible for removing the cabin. *Id*. at *16 ("BLM cannot require [Plaintiff Hall] to remove [the cabin] after having adopted it for public use.").

### B. In The United States Court Of Federal Claims.

On November 5, 2007, Plaintiffs filed a Complaint in the United States Court of Federal Claims alleging that "BLM took Plaintiffs' private property without due process and just compensation in violation of the Fifth Amendment of the United States Constitution." Compl. ¶ 6.[7] The November 5, 2007 Complaint requested: a declaratory judgment; the value of the mining claim, equipment, and structures taken, estimated at $1,187,310; and an award of attorney fees and costs. *Id*. ¶¶ 21-22.

On March 28, 2008, the Government filed a Motion To Dismiss. On June 13, 2008, Plaintiffs filed a Response In Opposition And Cross-Motion To Stay Litigation. On July 14, 2008, the Government filed a Reply.

---

[6] The IBLA stated, however, that "[w]e render no finding about the adverse effect on [Plaintiff's] mining rights and her right of possession created by BLM's authorizing recreation on the surface as that issue is not before us." *Mary Louise Hall* at *15 n.14.

[7] The Fifth Amendment of the United States Constitution provides:

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; *nor shall private property be taken for public use, without just compensation*.

U.S. CONST. AMEND. V. (emphasis added).

### III. DISCUSSION.

#### A. Jurisdiction.

The jurisdiction of the United States Court of Federal Claims is established by the Tucker Act. *See* 28 U.S.C. § 1491. This Act authorizes the court "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act, however, is "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages. . . . [T]he Act merely confers jurisdiction upon it whenever the substantive right exists." *United States* v. *Testan*, 424 U.S. 392, 398 (1976). Therefore, a plaintiff must identify and plead an independent contractual relationship, constitutional provision, federal statute, or executive agency regulation that provides a substantive right to money damages. *See Fisher* v. *United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (*en banc*) ("The Tucker Act itself does not create a substantive cause of action; in order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages."). The burden of establishing jurisdiction falls upon the plaintiff. *See FW/PBS, Inc*. v. *Dallas*, 493 U.S. 215, 231 (1990) (holding that the burden is on the plaintiff to allege facts sufficient to establish jurisdiction); *see also* RCFC 12(b)(1).

Because the Takings Clause of the Fifth Amendment is "money-mandating," *see Moden* v. *United States*, 404 F.3d 1335, 1341 (Fed. Cir. 2005), "[i]f there is a taking, the claim is founded upon the Constitution and within the jurisdiction of the Court of [Federal] Claims to hear and determine." *United States* v. *Causby*, 328 U.S. 256, 267 (1946) (internal quotation omitted). Therefore, "to the extent [Plaintiffs] have a nonfrivolous takings claim founded upon the Fifth Amendment, jurisdiction under the Tucker Act is proper." *Moden*, 404 F.3d at 1341.

#### B. Standing.

The United States Supreme Court has stated that "the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth* v. *Seldin*, 422 U.S. 490, 498 (1975). Standing must be determined "as of the commencement of suit." *Rothe Dev. Corp.* v. *Dep't of Def.*, 413 F.3d 1327, 1334 (Fed. Cir. 2005). The party invoking federal jurisdiction bears the burden of establishing standing. *Lujan* v. *Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Specifically, to establish standing, "a plaintiff must show [that] it has suffered an 'injury in fact' that is . . . concrete and particularized and . . . actual or imminent, not conjectural or hypothetical; . . . the injury is fairly traceable to the challenged action of the defendant; and . . . it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc*. v. *Laidlaw Envtl. Serv., Inc.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan*, 504 U.S. at 560-61).

### C.     Standard For Decision On A Motion To Dismiss, Pursuant To RCFC 12(b)(1).

A challenge to the "[United States Court of Federal Claims'] general power to adjudicate in specific areas of substantive law . . . is properly raised by a [Rule] 12(b)(1) motion[.]" *Palmer* v. *United States*, 168 F.3d 1310, 1313 (Fed. Cir. 1999); *see also* RCFC 12(b)(1) ("Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter[.]").  When considering whether to dismiss an action for lack of subject matter jurisdiction, the court is "obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor."  *Henke* v. *United States*, 60 F.3d 795, 797 (Fed. Cir. 1995).  Nonetheless, the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence.  *See Reynolds* v. *Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988) ("[O]nce the [trial] court's subject matter jurisdiction [is] put in question . . . [plaintiff] bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence.").

### D.     The Government's March 28, 2008 Motion To Dismiss.

#### 1.     The Parties' Arguments.

##### a.     The Government's Arguments.

The Government asserts three arguments as to why the Plaintiffs' claim should be dismissed. First, the court does not have jurisdiction to adjudicate the takings claim alleged in this case, because "the takings clause applies only to authorized Government action" and Plaintiffs repeatedly have conceded that the government acted unlawfully. *See* Gov't Mot. at 5; *Klump* v. *United States*, 38 Fed. Cl. 243, 247 (1997) ("To the extent that federal agents acted in a manner inconsistent with their authority under federal law, plaintiff may not seek redress under the Fifth Amendment's takings clause[,] because the takings clause applies only to authorized government actions."). The court may only adjudicate a takings claim if Plaintiffs "assume[] the legality of the Government action." Gov't Mot. at 6; *Rith Energy, Inc.* v. *United States*, 247 F.3d 1355, 1366 (Fed. Cir. 2001) ("[Plaintiff] is thus required to litigate its takings claim on the assumption that the administrative action was both authorized and lawful."). Assuming, *arguendo*, that the Government's actions were legal, Plaintiffs' takings claim nevertheless must be dismissed, because "[u]nder the Adopt-a-Cabin Program, BLM would have entered into an MOU with [Plaintiff] Hall [that] would have given BLM the right to maintain the cabin and open it to public use and would have given her the right to keep the structure on public lands." Gov't Mot. at 7. The Government adds that, "although not styled as such, [P]laintiffs appear to be alleging a tort claim, . . . which must be brought under the Federal Tort Claims Act, 28 U.S.C. 1346(b)(1)" in another forum. *Id*.

Second, the Government argues that Plaintiffs cannot maintain their takings claim, because the IBLA determined that Plaintiffs had no right to maintain a cabin or other structures on the mining claim that were not "reasonably incident" to mining, pursuant to 43 C.F.R. § 3715.2. *Id*. at 8; *see*

*also Mary Louise Hall* at *1.  The Government contends that "[i]t is well established that 'in adjudicating a taking claim, this Court does not have either the jurisdiction to review, or the authority to disregard, IBLA decisions that adjudicate property rights.'"  Gov't Mot. at 7 (quoting *Underwood Livestock, Inc.* v. *United States*, 79 Fed. Cl. 486, 497 (2007)).

Third, "'[t]o have a compensable interest in unpatented mining claims sufficient to bring a takings action in this Court, there must have been a determination as to the validity of those mining claims.'"  *Id*. at 9 (quoting *Holden* v. *United States*, 38 Fed. Cl. 732, 735 (1997)).  The validity of such a mining claim depends upon the discovery of a valuable mineral deposit.  *Id*.; *see also United States* v. *Coleman*, 390 U.S. 599, 602 (1968) ("[I]n order to qualify as 'valuable mineral deposits,' the discovered deposits must be of such a character that 'a person of ordinary prudence would be justified in the further expenditure of his labor and means, with a reasonable prospect of success, in developing a valuable mine[.]'") (citation omitted).  Because Plaintiffs have not requested nor received an administrative determination of the validity of the Silver Swan Claim, Plaintiffs "have not properly stated a takings claim."  Gov't Mot. at 9.

### b. The Plaintiffs' Response.

Plaintiffs respond that their takings claim is not based upon a regulatory violation, because the November 5, 2007 Complaint does not challenge the legality of BLM's actions.  *See* Pl. Resp. at 10.  Instead, the November 5, 2007 Complaint alleges that BLM's affirmative inaction resulted in a taking of Plaintiffs' property.  *Id*. at 11 ("Plaintiffs are asking this Court to determine that *once the BLM acknowledged that it was mistaken in placing the property in the program*, it then committed a taking[] of the Plaintiffs' property by failing to affirmatively take action to correct its mistake.") (emphasis in original).  Plaintiffs further argue that BLM's inactivity caused the public to continue to trespass on Plaintiffs' property, denying them the use of the unpatented mining claim.  *Id*. at 11.  BLM's taking "is a legal reality."  *Id*.  Therefore, the availability of another remedy against the Government, such as a tort claim, does not deprive the United States Court of Federal Claims of jurisdiction over the taking claim.  *Id*. (citing *Osprey Pac. Corp.* v. *United States*, 41 Fed. Cl. 150, 157 (1998) ("The fact that a plaintiff may have another remedy against the government, namely reversing the seizure action in a district court, has never been held to be a defense to an action in this court . . . the rightful property owner may elect at his or her option to treat the thief as purchaser, thus electing the contract over tort remedy . . . [and] [i]t is hardly a defense for the government to say it was wrong.")).  Plaintiffs emphasize that they are "not seeking to have this court determine if BLM was in violation of its regulations when it took Plaintiffs' property . . . [W]hether BLM's actions were lawful or not, Plaintiffs have been deprived of the use of their property, thus just compensation is due."  *Id*. at 12.

Plaintiffs also refute the Government's contention that Plaintiffs are asking the court to overturn the IBLA's decision.  *Id*.  Instead, Plaintiffs are seeking compensation, because of "a temporary taking of the Plaintiffs' property."  *Id*. at 13.  From "[t]he induction of the Plaintiffs' property into the Adopt-a-Cabin program in 2001 until the IBLA's decision in 2007," Plaintiffs

"have been unable to enjoy and utilize their property." *Id*. Compensation for this taking can be awarded without regard to the IBLA's determination. *Id*.

Plaintiffs agree with the Government that "[t]o have a compensable interest in unpatented mining claims" Plaintiffs must receive "a determination [from BLM] as to the validity of those mining claims." *Id*. (quoting *Holden*, 38 Fed. Cl. at 735); *see also* Gov't Mot. at 9. Plaintiffs disagree, however, that their failure to receive this determination before filing the Complaint warrants dismissal. *See* Pl. Resp. at 13-14. Plaintiffs request a stay so they can receive an administrative determination of the validity of their Silver Swan Claim. *Id*. at 14.

### c. The Government's Reply.

The Government replies that the reasoning in *Osprey* may be distinguished from the facts in this case, and in any event, is in conflict with the United States Court of Appeals for the Federal Circuit's decision in *Lion Raisins, Inc.* v. *United States*, 416 F.3d 1356 (Fed. Cir. 2005), holding:

> We have made clear that a claim premised on a regulatory violation does not state a claim for a taking. . . . [W]e [have] distinguish[ed] between the valid exercise of the [United States] Court of Federal Claim's jurisdiction over a takings claim when the claim was that "property was taken *regardless* of whether the agency acted consistently with its statutory and regulatory mandate" and the bar to such jurisdiction when "the plaintiff claims it is entitled to prevail *because* the agency acted in violation of statute or regulation."

*Id*. at 1369 (quoting *Rith Energy,* 247 F.3d 1355, 1366 (Fed. Cir. 2001) (emphasis in original)).

In this case, the November 5, 2007 Complaint alleges that Plaintiffs are entitled to relief, because of unlawful Government action, albeit a "mistake." *See* Gov't Reply at 4. Failing to correct a "mistake," however, is not cognizable under the Takings Clause of the Fifth Amendment. *Id*.; *see also Golden Pac. Bancorp* v. *United States*, 15 F.3d 1066, 1076 (Fed. Cir. 1994) ("[A] mistake may give rise to a due process claim, but not a taking claim. And the due process clause of the Constitution is not a money-mandating provision.") (internal citation omitted)).

### 2. The Court's Resolution.

The Takings Clause of the Fifth Amendment of the United States Constitution applies to real property as well as personal property. *See Maritrans Inc*. v. *United States*, 342 F.3d 1344, 1351 (Fed. Cir. 2003) ("Real property, tangible property, and intangible property all may be the subject of takings claims.") (internal citations omitted). For claims brought under the Takings Clause, the trial court is required to perform a two-step analysis. *See Karuk Tribe* v. *Ammon*, 209 F.3d 1366, 1374 (Fed. Cir. 2000) ("A takings claim calls for a two-step analysis."). First, the court must ascertain whether the claimant has established a property interest for purposes of the Fifth Amendment. *Id*.; *see also Am. Pelagic Fishing Co*. v. *United States*, 379 F.3d 1363, 1372 (Fed. Cir.

2004) (determining whether the plaintiff has a property interest is a "threshold matter"); *Wyatt* v. *United States*, 271 F.3d 1090, 1096 (Fed. Cir. 2001) ("[O]nly persons with a valid property interest *at the time of the taking* are entitled to compensation.") (emphasis added). Second, if the claimant is found to have a property interest, the court must determine whether the character of the governmental action affected the claimant's "bundle of property rights." *Karuk Tribe*, 209 F.3d at 1374.

### a. The Alleged Taking Of Plaintiff Hall's Silver Swan Mining Claim.[8]

The November 5, 2007 Complaint alleges that Plaintiff Hall has "exclusive possession" over the "surface property" of the Silver Swan Claim, the "right to exclude the public from her property," and a "valid property interest for purposes of compensation under the Fifth Amendment." Compl. ¶¶ 51, 65. The Complaint alleges that BLM's MOU unlawfully authorized "casual use mining on the unpatented [Silver Swan Claim]." *Id*. ¶ 39. Moreover, in attempting to mine her claim, Plaintiff Hall has been subject to "abuse by the volunteers [from the Adopt-a-Cabin Program] . . . and has even been shot at." *Id*. ¶ 50.

As stated above, this court must first ask whether Plaintiffs have a valid property interest in the unpatented Silver Swan Claim. *See Karuk Tribe*, 209 F.3d at 1374. Because the Fifth Amendment "protects rather than creates property interests, the existence of a property interest is determined by reference to 'existing rules or understandings that stem from an independent source such as state law.'" *Phillips* v. *Washington Legal Foundation*, 524 U.S. 156, 164 (1998 ) (quoting *Board of Regents of State Colleges* v. *Roth*, 408 U.S. 564, 577 (1972)).

It is well settled that although the United States holds legal title to unpatented mining claims in fee simple, "the claimant enjoys a valid, equitable title in the claim, possessing all of the incidents of real property." *Kunkes* v. *United States*, 32 Fed. Cl. 249, 252 (1994), *aff'd* 78 F.3d 1549 (Fed. Cir. 1996). As Plaintiffs recognize, however, "[t]o have a compensable interest in unpatented mining claims sufficient to bring a taking action in this [c]ourt, there must have been a determination as to the validity of those mining claims." Pl. Resp. at 13 (quoting *Holden*, 38 Fed. Cl. at 735); *see also Hafen* v. *United States*, 30 Fed. Cl. 470, 473 (1994) ("If a mining claim is found to be valid, the

---

[8] As Plaintiffs' Complaint states, only the Silver Swan Claim, # CAMC 49332, is at issue. Compl. ¶ 27 n.1. Plaintiff Hall forfeited the second Silver Swan claim, # CAMC 49333, and the ten White Swan claims in 2001 after she failed to pay the maintenance fees, required by 30 U.S.C. § 28f(a). *Id*.

claimant gains certain exclusive possessory rights.  No right, however, arises from an invalid claim of any kind.") (citing *Best* v. *Humboldt Placer Min. Co.*, 371 U.S. 334, 335 (1963)).  In other words: "[w]ithout a determination as to the validity of the plaintiffs' unpatented mining claims, those mining claims do not constitute a compensable property interest, and, therefore, the plaintiffs cannot recover in this Court under a taking theory."  *Holden*, 38 Fed. Cl. at 736 (internal citations omitted). Since Plaintiffs have not requested a determination of the validity of the Silver Swan Claim, a prerequisite for a takings action, Plaintiffs' request for a stay to afford BLM the opportunity to provide this opinion is granted.  *Id*.  ("Nevertheless, a stay of the proceedings in this case is warranted until the BLM has determined the validity of the plaintiffs' mining claims, and the parties have complied with all of the administrative procedures related to that determination.").

It is significant that unlike Plaintiffs' property interest in the structures on the Silver Swan Claim, neither BLM nor the IBLA ever contested Plaintiff Hall's potential property right to the Silver Swan Claim.  *See Mary Louise Hall* at *15 ("Even if BLM had properly required removal of the cabin, this would not have affected [Hall's] underlying right to conduct mining-related activities on the claim[.]").  Therefore, in denying the Government's Motion To Dismiss, as it relates to the mining claim and exclusive possession, the court does not overrule the IBLA's decision or disregard its authority.  *See Underwood Livestock*, 79 Fed. Cl. at 497.  The court is mindful that "where the administrative agencies of the Interior Department have decided that the United States (not the claimants) own the disputed property, the [United States] Court of [Federal] Claims [can] not review or overturn that administrative determination even though that court indisputably had jurisdiction over 'taking' claims."  *Aulston* v. *United States*, 823 F.2d 510, 514 (Fed. Cir. 1987).

    **b.**  **The Alleged Taking Of Structures And Personal Property On The Silver Swan Claim.**

The November 5, 2007 Complaint also alleges a taking of structures on the Silver Swan Claim, as well as personal property, including mining equipment, in violation of the Fifth Amendment.  *See* Compl. ¶ 65.  Around November 3, 2001, BLM mistakenly enrolled the structures on the Silver Swan Claim into the Adopt-a-Cabin Program.  *Id*. at ¶ 35.  Plaintiff Hall, however, concedes non-compliance with 43 C.F.R. § 3715.2, since August 18, 1997, having failed to establish that occupancy was reasonably incident and reasonably calculated to the extraction of minerals.  *Id*. at ¶ 29.  Although BLM could have taken corrective action at that time by issuing a NONC, it did not.  *See Mary Louise Hall* at *6.  Instead, BLM "sought Hall's permission to incorporate the cabin into [the] 'Adopt-a-Cabin' program."  *Id*.

It was not until January 2004 that BLM issued a NONC, informing Plaintiffs that BLM assumed ownership of the cabin on the Silver Swan Claim.  *Id*. at *12.  Plaintiffs appealed to the IBLA.  *See* Compl. ¶ 46.  The IBLA, however, affirmed the NONC, holding that "the cabin and other structures on the Silver Swan [C]laim were not being used for any purpose reasonably incident to mining[,] as required by 43 C.F.R. § 3715.2[,] and are therefore subject to removal."  *Mary Louise Hall* at *16.  The IBLA observed that Plaintiff Hall failed to comply with the requirements of 43 C.F.R. § 3715.2 prior to BLM's error in enrolling the cabin in the public program.  *Id*. at *6 ("The

record makes clear that Hall could not justify the presence of the cabin and other structures under 43 C.F.R. § 3715.2."); *see also id*. at *14 ("There can be little doubt that we would have affirmed the NONC had BLM issued it before adopting Hall's cabin.").

Given the factual allegations, as stated in the Complaint, and the IBLA's decision, Plaintiffs have failed to establish a property interest either in the cabin or other structures on the land, since at least 1997, because of noncompliance with BLM regulations. *Id*. at *16. In addition, if Plaintiffs wanted to challenge the legality of 43 C.F.R. § 3715 or the merits of the decisions of BLM or the IBLA, Plaintiffs were required to file an action in a United States District Court. *See Aulston*, 823 F.2d at 513 (judicial review of the IBLA's determination is not precluded, however, "Congress has vested review in the district courts, not in the [Court of Federal] Claims[.]"); *see also Underwood Livestock*, 79 Fed. Cl. at 497 (the United States Court of Federal Claims "does not have either the jurisdiction to review, or the authority to disregard, IBLA decisions that adjudicate property rights."); *Hafen*, 30 Fed. Cl. at 473-74 ("Although plaintiff has couched his complaint in the terms of a 'taking,' he is, in reality, asking the court to overturn the decision of the IBLA, and this we cannot do. In order for the court to determine if a taking has occurred, plaintiff must demonstrate a right to ownership of the placer mining claims. In light of the IBLA's decision, however, plaintiff has no valid existing right.").

Although it appears that unnamed private parties took some of Hall's mining equipment, the court also has no jurisdiction over that activity. *See Alves* v. *United States*, 133 F.3d 1454, 1457-58 (Fed. Cir. 1998) (relying on the Tenth Circuit's "majority rule" that "BLM's failure to prevent animal trespass on plaintiffs' lands in violation of [statute]" does not constitute a Fifth Amendment taking); *id*. at 1458 ("There clearly can be no taking when whatever acts complained of are those of private parties, not the Government."); *see also Griffin Broadband Communs*., *Inc*. v. *United States*, 79 Fed. Cl. 320, 324 (2007) ("[P]laintiffs allege that the Army failed to prevent theft of cable services by Army personnel, as well as physical damage to plaintiffs' property resulting from vandalism to and theft of cable equipment. A necessary component of any takings claim is that the Government actually took property, whether by physical invasion or regulatory action; the Government's failure to prevent Army personnel and families (acting in their private capacity, not as agents of the Government) properly is characterized as inaction, and so cannot constitute a taking."). For these reasons, Plaintiffs' takings claim as to the structures and personal property, as a matter of law, must be dismissed.

**IV.     CONCLUSION.**

       For these reasons, the Government's March 28, 2008 Motion To Dismiss is granted in part and denied in part.  The case is hereby stayed for six months, pending a validity determination of Plaintiff Hall's mining claim by BLM.

       **IT IS SO ORDERED.**


                                          s/ Susan G. Braden
                                          **SUSAN G. BRADEN**
                                          **Judge**